UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Carrie Lee Barron and
Nicholas Barron

     v.

Atrium Medical Corporation,
Maquet Cardiovascular US
Sales, LLC, and Getinge AB

In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)

Civil No. 17-cv-742-LM
Opinion No. 2019 DNH 145

O R D E R

Carrie Lee and Nicholas Barron bring suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims, breach of warranty claims, and a claim for loss of consortium. This suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. This case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss plaintiffs' claims on a variety of grounds.[1] Plaintiffs object.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

Carrie Lee Barron had a surgical procedure on November 4, 2014, to repair an umbilical hernia. Her physicians used a piece of C-QUR V Patch mesh to repair the hernia. The procedure was done at the University of Pittsburgh Medical Center in Cranberry Township, Pennsylvania. On December 5, 2016, Barron underwent another procedure because of a recurrence of the hernia, when infected mesh was removed from the site of her previous repair.

Atrium, which designed, marketed, and sold the C-QUR V Patch mesh that was implanted into Carrie Lee, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Plaintiffs allege that Maquet and Getinge are responsible for Atrium's actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Plaintiffs allege, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR mesh was

safe and effective for that purpose. They further allege that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Plaintiffs bring claims for negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability and fitness of purpose (Count VI), punitive damages (Count VII), and loss of consortium (Count VIII).

## DISCUSSION

Defendants Atrium and Maquet contend that Pennsylvania law governs the liability portion of plaintiffs' claims and that the claims fail under the applicable law. Plaintiffs object, arguing that a choice of law is premature and that, other than as to certain claims, defendants have not sufficiently identified a conflict that requires a choice-of-law analysis. They further contend that if the court engaged in a choice-of-law analysis, New Hampshire law governs.

I. Choice of Law

As a preliminary matter, plaintiffs argue that a choice of law is premature at this stage of the litigation. They cite cases where courts have found that discovery or development of the record was necessary to resolve the issue of a choice of law. Plaintiffs, however, do not identify any missing information that would be necessary for a choice-of-law determination here or show that this case is not sufficiently developed to address the issue. Therefore, plaintiffs have not shown that a choice-of-law determination is premature, and the court employs the analysis.

The parties agree that New Hampshire choice-of-law principles govern in this bellwether case.  See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must apply the choice-of-law framework of the forum state").  "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000).  An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome.  Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993).  When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire.  Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010).  The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law.  SIG Arms, 122 F. Supp. 2d at 259.

A. Actual Conflict

Both New Hampshire, where Atrium manufactured the allegedly defective mesh products, and Pennsylvania, where the mesh was implanted, are interested states.[2]  Defendants assert that an actual conflict exists between the laws of New Hampshire and Pennsylvania with respect to plaintiffs' strict liability claims, Counts II-IV, because Pennsylvania does not recognize strict product liability for manufacturers or sellers of prescription medical implants,

---

[2] Neither defendants nor plaintiffs suggest that South Carolina is an interested state although plaintiffs currently live there.

such as the C-QUR mesh at issue in this case. They also assert that, unlike New Hampshire, Pennsylvania does not recognize a claim for breach of the implied warranties of merchantability and fitness of purpose.

Plaintiffs concede that there is an actual conflict between New Hampshire and Pennsylvania law with regard to their breach of implied warranties claim. With respect to their strict liability claims, however, plaintiffs note that "there is a split among federal district courts applying Pennsylvania law as to whether strict liability is an available cause of action against the manufacturer of a medical device." Atkinson v. Ethicon, Inc., No. 13-697, 2019 WL 3037304, at *5 (W.D. Pa. July 11, 2019). To the extent the cause of action is recognized, however, it is limited to manufacturing defects. Id.

Plaintiffs also argue that defendants fail to identify any other actual conflict between New Hampshire and Pennsylvania law with regard to their remaining claims. They note that in the absence of such a showing with respect to each claim, as required by the doctrine of dépeçage, New Hampshire law applies.

In their reply, defendants argue that the court should not apply the doctrine of dépeçage here because the "issues before the court are inextricably intertwined . . . given the common nucleus of facts that form the basis of" plaintiffs' claims. Doc. no. 72 at 3. They also contend that, regardless, Pennsylvania law actually conflicts with New Hampshire law with regard to plaintiffs' remaining claims. Specifically, they assert that under Pennsylvania law, a plaintiff must plead and prove that a feasible alternative design exists in order to maintain a negligent design defect claim while New Hampshire does not recognize that rule.

The court agrees with plaintiffs that dépeçage requires the court in the context of this case to consider the choice-of-law question as to each claim. First, defendants' argument that a court

5

should not apply dépeçage when the claims are "inextricably intertwined" is based on a case from the Eastern District of Wisconsin.  See Stupak v. Hoffman-La Roche, Inc., 287 F. Supp. 2d 968, 971-72 (E.D. Wis. 2003) (citing Boomsma v. Star Transp., Inc., 202 F. Supp. 2d 869, 878 (E.D. Wis. 2002)).  A recent case in that district suggests that the "inextricably intertwined" principle may not be a correct statement of the law.  See PCM Salles Inv. Vantage Point Corp., No. 18-CV-1230-JPS, 2019 WL 3070078, at *5 n.1 (E.D. Wis. July 12, 2019) (noting that the "inextricably intertwined" theory came from no "source of law, but rather from a party's brief" and that "[n]o Wisconsin appellate courts, or the Seventh Circuit for that matter, have endorsed the 'inextricably intertwined' phrase").

Even if the court were inclined to follow defendants' questionable theory, they have not shown that the issues presented in plaintiffs' product liability claims, breach of warranties claims, and loss of consortium claim are inextricably intertwined.  Indeed, the issues are different because, as defendants note in their briefs, the legal standards for the claims require different elements of proof.  Therefore, dépeçage requires the court to consider the choice-of-law question separately for each claim.

Defendants have carried their burden to show an actual conflict between New Hampshire and Pennsylvania law with respect to Counts II-IV and VI.[3]  Therefore, the court employs a choice-of-law analysis with respect to those claims.

With respect to the remaining claims, however, defendants have not carried their burden to show an actual conflict.  Although they show that certain differences exist between New

---

[3] As noted above, it is unclear whether there is an actual conflict between New Hampshire and Pennsylvania law with respect to plaintiffs' strict liability claim based on a manufacturing defect asserted in Count III.  In an abundance of caution, the court employs a choice-of-law analysis as to that claim.

6

Hampshire and Pennsylvania law as to a claim for negligence in these circumstances, they fail to show that plaintiffs could not allege facts that would satisfy the standard imposed by Pennsylvania law. Because defendants have not carried their burden as to plaintiffs' claims other than their claims for strict product liability, Counts II-IV, and breach of the implied warranties of merchantability and fitness of purpose, Count VI, the court will apply New Hampshire law to the liability portion of plaintiffs' other claims. See Aftokinito, 2010 WL 3168295, at *3.

B.  Choice of Law for Counts II-IV and VI

New Hampshire uses a five-factor test for choice of law: "(1) predictability of results; (2) maintenance of reasonable orderliness and good relationship among the states in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own state's governmental interests rather than those of other states; and (5) the court's preference for what it regards as the sounder rule of law." Matter of Geraghty, 169 N.H. 404, 409 (2016). "The relative importance of each factor varies depending on the type of case." Lacaillade v. Loignon Champ-Carr, Inc., No. 10-cv-68-JD, 2011 WL 4738654, at *2 (D.N.H. Oct. 7, 2011).

The first three factors have little or no relevance in this case. The first factor—predictability of results—"is usually implicated only in suits involving contractual or similar consensual transactions and emphasizes the importance of applying to the parties' bargain or other dealings the law on which they agreed to rely at the outset." Stonyfield Farm, Inc. v. Agro-Farma, Inc., No. 08-cv-488-JL, 2009 WL 3255218, at *7 (D.N.H. Oct. 7, 2009) (internal quotation marks and citations omitted). Thus, the first factor has no weight here.

The second factor—maintenance of reasonable orderliness and good relationship among the states in our federal system—requires only that the court avoid applying the law of a state

7

"which does not have substantial connection with the total facts and with the particular issue being litigated." Lessard v. Clarke, 143 N.H. 555, 557 (1999) (internal quotation marks and citation omitted). Both Pennsylvania and New Hampshire have substantial connections with the facts in this case. Carrie Lee's surgeries occurred in Pennsylvania, and Atrium is located in New Hampshire and manufactures and sells its C-QUR mesh products here. Thus, the second factor has little relevance.

With respect to the third factor—simplification of the judicial task—the court is of course more accustomed to New Hampshire product liability and warranty law but could also apply Pennsylvania law with little difficulty. See Lacaillade, 2011 WL 4738654, at *3 ("Although it may be easier for a court to apply the forum state's substantive law, it certainly cannot be argued that Maine's law regarding the relevant issue is so complex as to outweigh other competing considerations."). Therefore, none of the first three factors tips the balance on the choice-of-law analysis in this case.

The fourth factor considers the advancement of the forum state's governmental interests. This factor "becomes important only when New Hampshire has a particularly strong policy in reference to local rules of law, which the other state[']s laws under consideration would fail to achieve." Stonyfield Farm, 2009 WL 3255218, at *8 (internal quotation marks, citation, and alterations omitted). "Otherwise, New Hampshire's interest is limited to the fair and efficient administration of justice." Id. (internal quotation marks and citations omitted). Here, as in many other cases, this factor is of limited importance. To the extent it carries any weight, however, it favors the application of New Hampshire law. New Hampshire has an interest in the liability of a New Hampshire company for injuries caused by its products. See, e.g., Lacaillade, 2011 WL 4738654, at *3 n.4 (noting that New Hampshire has an interest in regulating the liability of its

8

corporations); see also Turcotte v. Ford Motor Co., 494 F.2d 173, 178 (1st Cir. 1974). Therefore, the fourth factor has little relevance but, to the extent it carries any weight, it favors the application of New Hampshire law.

The fifth factor—the sounder rule of law—"allows the court, where everything else is equal, to choose to apply [a] state's rule that it regards as wiser, sounder, and better calculated to serve the total ends of justice, especially where one state's rule lies in the backwater of the modern stream." TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at *6 (D.N.H. Sept. 29, 2015) (internal quotation marks and citation omitted). "As such, [this factor] tends to play a tie-breaker role in close cases." Id. (internal quotation marks and citation omitted).

The sounder rule of law depends on the policies behind the conflicting laws and the court's view of "the socio-economic facts of life at the time when the court speaks." Geraghty, 169 N.H. at 412. This factor applies "even when the injury occurs out of State." LaBounty v. Am. Ins. Co., 122 N.H. 738, 743 (1982).

Defendants gloss over the fifth factor in their memorandum in support of their motion to dismiss and in their reply brief, making no argument as to which law is sounder. Instead, defendants' choice-of-law analysis focuses on Pennsylvania's relationship to Carrie Lee's surgeries and sale of their mesh product and argue that Pennsylvania law applies because it "has the most significant relationship to Plaintiffs' claims." Doc. no. 66-1 at 7. While the "significant relationship" test is used in some states, it is not used in New Hampshire.[4] TIG

---

[4] In their reply, defendants rely on a case from the District of Illinois to show that New Hampshire's choice-of-law framework and the significant relationship test are "substantially similar." Doc. no. 72 at 6 n.1 (quoting In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig., No. 14-CV-5696, 2017 WL 1196990, at *33 (N.D. Ill. Mar. 31, 2017)). As the court in Fluidmaster notes, however, many New Hampshire courts apply the five-factor test

9

Ins., 2015 WL 5714686, at *4; Geraghty, 169 N.H. at 409. Defendants make no argument that Pennsylvania law provides the sounder rules of law as to strict product liability and breach of warranty.

As is noted above, Pennsylvania restricts the availability of strict product liability and breach of implied warranty claims in the context of the manufacture and sale of medical devices, which is the product at issue here. In contrast, New Hampshire has chosen to put the risk of liability for injury caused by products, without excluding medical devices, on product manufacturers and sellers:

> The reasons for the evolution of the law in the area of products liability are many. We live in an era of national advertising and of nationwide distribution which can add or remove a product from our store shelves in a matter of days. Many of those nationally sold products contain chemical compounds and synthetics the side effects of which clearly cannot be anticipated. It is believed that if today's products are capable of causing illness or physical injury, the risk of liability is best borne by the companies that profited from their sale, rather than by the unfortunate individual consumers.

Heath v. Sears, Roebuck & Co., 123 N.H. 512, 521 (1983); see also Royer v. Catholic Med. Ctr., 144 N.H. 330, 334-35 (1999) (holding that a hospital that provides a prosthetic knee to be implanted during surgery at the hospital is not in the business of selling prosthetic knees unlike the manufacturer of the product); Parenteau v. Johnson & Johnson Orthopedics, Inc., 856 F. Supp. 61, 64 (D.N.H. 1994) (holding that federal law did not preempt state law strict liability claim for defective prosthesis); see also Connelly v. Hyundai Motor Co., 351 F.3d 535, 539 (1st Cir. 2003) ("The New Hampshire Supreme Court has consistently declined to adopt the rule

---

or consider the "significant relationship" test only as to contract claims. Id. (citing Glowski v. Allstate Ins. Co., 134 N.H. 196, 198 (1991), Aftokinito, 2010 WL 3168295, at *3, and Smith v. Morbark Indus., Inc., 733 F. Supp. 484, 487 (D.N.H. 1990)). To the extent defendants urge a choice-of-law analysis other than New Hampshire's five-factor test, the court finds their arguments unpersuasive.

10

urged by Hyundai—that a trial court may not instruct a jury on both strict liability and negligence counts in a product liability action."); State v. Exxon Mobil Corp., 168 N.H. 211, 247-50 (2015) (discussing the development of New Hampshire's product liability law and the efforts to avoid the "practically impossible burden" that many plaintiffs face in such cases).

In the absence of any showing by defendants that Pennsylvania provides the sounder rule of law, the fifth factor weighs in favor of New Hampshire law and tips the balance in that direction. The court will therefore apply New Hampshire law to the liability portion of all claims in this case.

II. Merits of the Claims

Defendants move to dismiss plaintiffs' strict liability claims, Counts II-IV, and their breach of implied warranties claim, Count VI, on the ground that they are not cognizable under Pennsylvania law. Because New Hampshire law, not Pennsylvania law, governs the claims, defendants' motion to dismiss does not address the applicable law and their arguments as to these claims are without merit.

Defendants also contend that plaintiffs fail to allege a negligence claim in Count I and a breach of express warranty claim in Count VI under Pennsylvania law. For the reasons discussed above, the court need not address defendants' arguments based on Pennsylvania law.[5] Therefore, defendants have not properly supported their motion to dismiss Counts I-VI.

---

[5] Defendants also state that plaintiffs' negligence claim fails under New Hampshire law, but they provide no cite to any case that applies New Hampshire law and make no arguments under New Hampshire law. Instead, defendants cite Gray v. Derderian, Nos. CA 04-312L, CA 03-483L, 2009 WL 2997063 (D.R.I. Aug. 14, 2009), in support of their statement that plaintiffs do not state a negligence claim under New Hampshire law. The cited decision is a report and recommendation on seven defendants' motions to approve settlements in the District of Rhode Island and does not appear to involve New Hampshire negligence law.

11

Defendants are correct, however, that a claim for punitive damages, as alleged in Count VII, does not set out a "claim for relief" within the meaning of Federal Rule of Civil Procedure 8(a)(2). Instead, it is a request for a remedy and should not be labeled a separate "count." D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., No. 17-cv-747-LM, 2018 WL 6519070, at *6 (D.N.H. Dec. 11, 2018). Although plaintiffs' request for punitive damages is not a separate count, the request remains in the case at this stage of the proceedings. Id. (citing cases).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 66) is denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 5, 2019

cc: Counsel of Record